[No. B239465. Second Dist., Div. One. Jan. 31, 2013.]

In re GLORIA A., a Person Coming Under the Juvenile Court Law.
GUADALUPE S., Plaintiff and Appellant, v.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Defendant and Respondent.

478

COUNSEL

Janice A. Jenkins, under appointment by the Court of Appeal, for Plaintiff and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Defendant and Respondent.

Linda J. Vogel, under appointment by the Court of Appeal, for Minor.

OPINION

**ROTHSCHILD, J.**—Appellant Guadalupe S. is the paternal grandfather of Gloria A., who has been declared a dependent child of the juvenile court

based on the absence of parental care and support. (Welf. & Inst. Code, § 300, subds. (b) & (g).) Guadalupe challenges the court's dependency finding and all subsequent findings and orders on the ground that the court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA or Uniform Act) (Fam. Code, § 3400 et seq.). Respondents, Gloria and the Los Angeles County Department of Children and Family Services (DCFS), contend that the court had jurisdiction under the Uniform Act and the DCFS contends that, in any event, Guadalupe lacks standing to challenge the court's jurisdiction.

We hold that Guadalupe has standing to challenge the court's subject matter jurisdiction under the Uniform Act. On the merits, we hold that substantial evidence does not support the court's finding of "home state" jurisdiction under the Uniform Act. We reverse the court's orders and remand the case with directions to the court to determine whether an alternative basis for its jurisdiction existed under the Uniform Act and, if not, to proceed in accordance with that Act.

## FACTS AND PROCEEDINGS BELOW

Gloria was born in August 2004, in Nayarit, Mexico. Sometime after killing Gloria's father, Gloria's mother (Mother) fled Mexico to the United States, bringing Gloria with her.[1] Their date and point of entry are disputed. It is undisputed, however, that on January 21, 2009, United States immigration officers apprehended Mother in San Fernando, California, and returned her to Mexico where she was tried and convicted of murder and sentenced to prison.

When Mother was arrested, she left Gloria in the care of Francisco O., Mother's boyfriend, who lived in Pacoima. In February 2009, Guadalupe, Gloria's paternal grandfather, arrived in Los Angeles County and attempted to take custody of Gloria from Francisco. When Francisco refused to release Gloria to him, Guadalupe contacted the police. The police in turn contacted the DCFS, which removed Gloria from Francisco's custody and placed her in a foster home.

On February 16, 2009, Guadalupe filed a petition in the family court of Nayarit, Mexico, seeking custody of Gloria.

---

[1] Mother brought two of her other children to the United States a month or two later. These children are not subjects of this appeal.

On February 18, 2009, the DCFS filed a dependency petition in the Los Angeles County Superior Court alleging Gloria lacked parental care and support. (Welf. & Inst. Code, § 300, subds. (b) & (g).) That same day the court ordered Gloria detained and ordered the DCFS to notify the Mexican consulate of the pending dependency proceedings, obtain documentation of the Mexican family court proceedings and evaluate Gloria's possible placement with Guadalupe in Mexico and with Gloria's maternal cousin in Sylmar. The court subsequently placed Gloria with the cousin.

On or about February 25, 2009, the family court in Mexico awarded Guadalupe temporary guardianship of Gloria.

Between June 2009 and August 2010, the juvenile court received evidence and heard argument on the issue of whether it had subject matter jurisdiction under the Uniform Act over the dependency proceedings pertaining to Gloria. (Fam. Code, § 3400 et. seq.)[2] Among other things, the court considered a rogatory letter from the Mexican family court demanding repatriation of Gloria to Mexico and stating that California courts lacked jurisdiction over Gloria because she had not lived in the state for the requisite time before the filing of the dependency petition.[3]

On August 26, 2010, the juvenile court found that "Gloria has been here the requisite amount of time with respect to demonstrating that the court had exclusive jurisdiction [under the Uniform Act] with respect to Gloria; and that any orders made in Mexico [were] without jurisdiction. This court had jurisdiction, because under the [Uniform Act] I think the requisite time period has been made." (The court's reference to the "requisite time period" is a reference to one of the criteria for "home state" jurisdiction under the Uniform Act. As we discuss below, the evidence does not support jurisdiction on this ground.)

The court proceeded with adjudication and disposition hearings. It found Gloria to be a dependent child on the grounds alleged in the petition and that she should remain placed with her maternal cousin in Los Angeles County.

---

[2] As discussed more fully below, the purpose of the Uniform Act is to avoid interstate jurisdictional conflicts over custody issues by, among other things, prescribing a series of tests for determining the state or foreign country that is entitled to make and enforce child custody decrees. (Fam. Code, § 3421, subd. (a).)

[3] We grant respondent Gloria's request that we take judicial notice of the Inter-American Convention on Letters Rogatory (Jan. 30, 1975) to which the United States is a signatory. (Evid. Code, § 452, subd. (c); In re Alyssa F. (2003) 112 Cal.App.4th 846, 854, fn. 10 [6 Cal.Rptr.3d 1].) We deny respondent Gloria's request that we take judicial notice of a report by the United States Department of Homeland Security for the purpose of drawing certain factual conclusions from that report about the ease of illegal entry into the United States from Mexico. No statute permits us to take judicial notice of such purported facts.

The court ordered that Guadalupe be allowed weekend day visits with Gloria and gave the DCFS discretion to allow overnight visits after consultation with Gloria's therapist.

In January 2012, Guadalupe filed a modification petition under Welfare and Institutions Code section 388, asking that Gloria "be placed in my care" or that she be placed in a guardianship with her cousin, not an adoption, and that the cousin be ordered to allow visitation by Guadalupe and his wife. The court denied this petition without a hearing on January 11, 2012. On February 16, 2012, Guadalupe filed a notice of appeal from the court's order.

While this appeal was pending, the court terminated Mother's parental rights.[4]

## DISCUSSION

I. *The Juvenile Court's Subject Matter Jurisdiction Is Properly Before Us*

The DCFS has moved to dismiss Guadalupe's appeal on the grounds that he lacks standing to challenge the juvenile court's subject matter jurisdiction and, although he has standing to appeal the denial of his Welfare and Institutions Code section 388 petition, he has not supported that appeal with legal arguments and citations of authority. (Cal. Rules of Court, rule 8.204.) We deny the motion to dismiss.

 The lack of subject matter jurisdiction in the fundamental sense argued by Guadalupe means an entire absence of power to hear or determine the case. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942].) Subject matter jurisdiction has to be addressed whenever that issue comes to the court's attention. (*Keiffer v. Bechtel Corp.* (1998) 65 Cal.App.4th 893, 896 [76 Cal.Rptr.2d 827].) The decision in *Chromy v. Lawrance* (1991) 233 Cal.App.3d 1521 [285 Cal.Rptr. 400] illustrates this point. In *Chromy*, the defendants filed a demurrer challenging subject matter jurisdiction, which the trial court overruled. The defendants did not seek relief by way of a writ, and a jury trial followed, resulting in a defense verdict. The plaintiff appealed and challenged the verdict on several grounds, but neither party discussed subject matter jurisdiction on appeal. The Court of Appeal raised the issue on its own, found a lack of subject matter jurisdiction, vacated the judgment and ordered the trial court to dismiss the action. In doing so, the appellate court explained, " '[W]here a court is wholly lacking in jurisdiction of the subject matter of an action, jurisdiction may not be conferred by consent, waiver, agreement, acquiescence, or estoppel.' " (*Id.* at p. 1524.)

---

[4] We grant Guadalupe's request that we take judicial notice of this order.

■ Furthermore, "[a]ny party aggrieved may appeal . . ." a decision made appealable by statute. (Code Civ. Proc., § 902.) "An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*In re K.C.* (2011) 52 Cal.4th 231, 236 [128 Cal.Rptr.3d 276, 255 P.3d 953].) Guadalupe's rights and interests were injuriously affected by the court's assumption of jurisdiction because he was unable to enforce the temporary guardianship order of the Mexican family court in his favor and would be unable to enforce any subsequent order of that court pertaining to Gloria.

We address below the issue of subject matter jurisdiction, having been fully briefed by the parties.[5]

## II. Substantial Evidence Does Not Support "Home State" Jurisdiction Over Gloria's Dependency Proceeding

### A. Statutory Background

■ The purpose of the Uniform Act, like its predecessor, the Uniform Child Custody Jurisdiction Act (Welf. & Inst. Code, former § 3400 et seq.), is to avoid jurisdictional competition between states or countries, promote interstate cooperation, avoid relitigation of another state's or country's custody decisions and facilitate enforcement of another state's or country's custody decrees. (*In re Joseph D.* (1993) 19 Cal.App.4th 678, 686–687 [23 Cal.Rptr.2d 574] [construing the Uniform Child Custody Jurisdiction Act].) The Uniform Act governs dependency proceedings and applies to international as well as interstate custody disputes. (Fam. Code, § 3405, subd. (a); *In re A. C.* (2005) 130 Cal.App.4th 854, 860 [30 Cal.Rptr.3d 431].) Subject matter jurisdiction under the Uniform Act is determined as of the time the action in question is commenced. (Fam. Code, § 3405, subd. (a); *In re A. C.*, at p. 860.)

■ The Uniform Act provides five ways in which subject matter jurisdiction may be established. (Fam. Code, §§ 3421, subd. (a), 3424.) The first way, and the one chosen by the juvenile court in this case, is through "home state" jurisdiction. A state has "home state" jurisdiction if it was "the home state of the child on the date of the commencement of the proceeding . . . ." (Fam. Code, § 3421, subd. (a)(1).) A "home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." (Fam. Code, § 3402, subd. (g).) A parent or child's "period

---

[5] Gloria filed a respondent's brief supporting the subject matter jurisdiction of the juvenile court.

of temporary absence" from the state counts as part of the six consecutive months. (*Ibid.*) Thus, for "home state" jurisdiction to apply, the child must have (1) lived in the state with a parent or a person acting as a parent (2) for at least six consecutive months (including temporary absences) (3) immediately before the commencement of the child custody proceeding.

**B. *There Is No Evidence Showing When Gloria and Mother Entered California***

The record contains no evidence as to when Gloria and Mother began living in California.

Mother's boyfriend, Francisco, told a DCFS worker in February 2009 that "[M]other arrived to the United States about 9 months ago with Gloria." In June 2010, Francisco told a DCFS worker that "on May 7, 2008, [M]other and her daughter Gloria crossed from Nogales to USA." Mother told a DCFS worker in a telephone conversation from prison in July 2010 that "her daughter Gloria and she crossed into the USA on [May 7, 2008]." Gloria's maternal grandmother told the DCFS that Gloria and Mother left Mexico by way of Nogales where they were "crossed over by a coyote on May 7th of 2008."

The evidence shows that Gloria and Mother came to the United States in May 2008 but there is no evidence that they were in California before January 21, 2009. The only evidence of their point of entry consists of the statements of Francisco and Gloria's maternal grandmother, who reported that Gloria and Mother crossed into the United States from Nogales, Mexico, a town that shares the border with Nogales, Arizona.

**C. *The Undisputed Evidence Shows That Gloria Did Not Live with Mother in California for at Least Six Consecutive Months Immediately Before Commencement of the Dependency Proceeding***

This dependency proceeding commenced on February 18, 2009. In order to establish "home state" jurisdiction, Gloria must have lived with Mother in California "for at least six consecutive months immediately before" February 18, 2009. (Fam. Code, § 3402, subd. (g).) It is undisputed, however, that Mother was arrested in California and deported to Mexico on or about January 21, 2009. Thus, regardless of when Gloria and Mother entered

California, their consecutive months of living together in the state ended a month before the dependency proceeding commenced.[6]

The DCFS contends the statutory requirement that Gloria live with Mother "immediately" prior to the commencement of the dependency proceeding (Fam. Code, § 3402, subd. (g)) cannot be applied literally because, in nearly every dependency case in which the child is removed from the parent, the removal precedes the filing of the dependency petition. In other words, there almost always will be a gap between the time the child is removed from the parent's custody and the time a dependency petition is filed. While there may be a short gap between removal from custody and the filing of a petition, it cannot exceed 48 hours. (Welf. & Inst. Code, § 313, subd. (a); Cal. Rules of Court, rule 5.670(b).) We need not decide whether 48 hours is sufficiently "immediate" for jurisdictional purposes under the Uniform Act.[7] We are certain that *28 days* between the date Gloria ceased living with Mother and the date the DCFS filed its dependency petition is not "immediate" under any sensible interpretation of the word.

Gloria maintains that Mother's deportation and incarceration in Mexico on a murder charge did not interrupt their consecutive six months of residing together in California because Mother's absence was merely "temporary." (See Fam. Code, § 3402, subd. (g).) We disagree. Even if Mother had been released from prison in Mexico the day after she was incarcerated, she would not have been eligible for readmission to the United States for five years unless the Attorney General granted a waiver. (8 U.S.C. § 1182(a)(9)(A)(i), (ii).) Given the circumstances of her first, illegal, entry into the country, a waiver seems unlikely. Even more fanciful is Gloria's suggestion that Mother might escape from prison and once again sneak across the porous United States-Mexico border. The DCFS was far more realistic, noting in its February 2009 detention report that "[i]t is unknown how long [Mother] will be in prison . . . ."

## DISPOSITION

We reverse the court's orders in this case for lack of subject matter jurisdiction under Family Code section 3421, subdivision (a)(1). The cause is

---

[6] Respondents do not contend that Francisco was a "person acting as a parent" for purposes of calculating the six consecutive months. (Fam. Code, § 3402, subd. (g).)

[7] The Uniform Act commissioners' comments on "home state" jurisdiction do not discuss the meaning of the term "immediately."

remanded with directions to determine whether, at the time of the commencement of the dependency proceeding, there was an alternative basis for the court's jurisdiction under the Uniform Act and, if there was not, to proceed in accordance with the provisions of that Act.

Mallano, P. J., and Johnson, J., concurred.