Filed 7/1/14  In re B.T. CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re B.T., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>B.J., et al.,<br><br>       Defendants and Appellants. | A139177, A139876<br><br>(San Francisco County<br> Super. Ct. No. JD113075) |

Mother K.U. and father B.J. (collectively, parents) jointly appeal from the juvenile court's orders to (1) deny their request for a bonding study, (2) deny their request for reconsideration of the prior order finding jurisdiction over minor B.T. pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam. Code, § 3400 et seq.), (3) summarily deny their petition for modification of the prior order terminating reunification services, and (4) terminate their parental rights with respect to minor after finding inapplicable the beneficial relationship exceptions to Welfare and Institutions Code section 366.26.[1]  We affirm.

---

[1]     Unless otherwise stated, all statutory citations herein are to the Welfare and Institutions Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts were, to a large extent, set forth in two earlier opinions in this cause, and will not be repeated at length here. (*B.J. v Superior Court* (*San Francisco Human Services Agency*), A138336, June 24, 2013, nonpub. op; *San Francisco Human Services Agency v. B.J.*, A136900, February 11, 2014, nonpub. op. (pet. for review denied by California Supreme Court, April 30, 2014) (S217445).)[2] In these earlier opinions, this court: (1) denied parents' petition for writ of review of the juvenile court's order terminating reunification services following the 18-month review hearing and setting the matter for hearing to implement a permanent plan for minor (A138336), and (2) affirmed the juvenile court's findings and order following a combined six- and 12-month review hearing recognizing jurisdiction over minor pursuant to the UCCJEA, extending reunification services for six months, and continuing minor's placement with his foster family (A136900). We thus begin where our earlier opinions end.

On March 27, 2013, parents filed a motion for reconsideration of the juvenile court's finding that it had jurisdiction over minor on the basis of a new appellate decision, *In re Gloria A*. (2013) 213 Cal.App.4th 476, filed January 31, 2013 (*Gloria A.*).[3] According to parents, *Gloria A*. clarified that California is not a child's home state for purposes of the UCCJEA where, as here, the child was not living in California for six months immediately preceding the commencement of the case.

Approximately a month later, on April 8, 2013, parents filed a request for a bonding study, arguing that before the court could properly find that adoption was in minor's best interest, further information was necessary regarding the strength of the parent/child bond. Both the agency and minor's counsel opposed the request as untimely and unwarranted.

---

[2]     Parents' unopposed request on April 24, 2014, for judicial notice of the petition for review of our decision in Case No. A136900, as well as the related information in the Court of Appeal's register of actions, is granted.

[3]     As set forth above, this court affirmed the juvenile court's jurisdiction finding on February 11, 2014 (A136900), a decision the California Supreme Court declined to review on April 30, 2014 (S217445).

On May 2, 2013, a hearing was held with respect to both the motion for reconsideration regarding jurisdiction and the request for a bonding study. Following this hearing, the juvenile court denied both of parents' motions. With respect to jurisdiction, the court concluded parents had failed to meet their burden to show the existence of any new fact or new law warranting reconsideration of the issue. With respect to the bonding study, the court concluded that parents' request had come too late in the proceedings and that, in any event, it was not necessary given the wealth of information from experts and other witnesses already in the record that indicated the lack of any substantial parent/child bond.

About a month later, on May 31, 2013, the juvenile court granted a request by minor's counsel to reduce the Skype visitation that had been occurring twice weekly between minor and his parents and sister. Minor's therapist, Dr. Santiago supported this request, noting in particular a recent increase in minor's anxiety level and disruptive behavior during visitation. In granting minor's counsel's request, the juvenile court accepted Dr. Santiago's recommendation to taper visitation to weekly for the first month, bimonthly for the second month, and thereafter to monthly.

On July 1, 2013, parents filed a timely notice of appeal from the May 2, 2013 order and findings and, specifically, to the juvenile court's refusal to reconsider the issue of jurisdiction. This appeal was subsequently designated Case No. A139177.

In late August 2013, just days before the August 22, 2013 section 366.26 hearing was set to occur, parents filed a petition (later amended) pursuant to section 388 to modify the juvenile court's March 28, 2013 order terminating reunification services. In doing so, parents requested six additional months of services and minor's return to their custody in Mexico. In support of their petition, parents argued that minor has "a right to grow up with his biological [family]," and that six additional months of services "would allow him this possibility[.]" The agency and minor's counsel opposed the motion as contrary to minor's best interests and not supported by any relevant new information.

On August 21, 2013, the juvenile court denied parents' section 388 petition without a hearing and, the next day, proceeded with the permanency planning hearing.

3

Following this hearing, at which several expert and other witnesses testified, the court found by clear and convincing evidence that minor was adoptable. In addition, the juvenile court found insufficient evidence to support parents' contentions that terminating their parental rights would be detrimental to minor due to a significant beneficial parent-child relationship. The court thus terminated parental rights and scheduled a six-month post permanency planning hearing for February 3, 2014.

On September 25, 2013, parents filed a timely notice of appeal of the juvenile court's August 21 and 22, 2013, orders and findings. This appeal was subsequently designated Case No. A139876.

## DISCUSSION

Parents contend the juvenile court erred in (1) denying their request for a bonding study, (2) denying their motion for reconsideration of the court's finding of jurisdiction over minor pursuant to the UCCJEA, (3) denying their section 388 petition to modify the prior order terminating reunification services, and (4) ordering termination of their parental rights with respect to minor.[4] For reasons discussed below, we affirm.

### I. Denial of Request for Bonding Study.

Parents first requested a bonding study to assess minor's relationship with his family in Mexico after reunification services had terminated and the matter had been set for a permanency planning hearing pursuant to section 366.26.[5] The juvenile court denied parents' request on the grounds that (1) it came too late in the proceedings, and (2) there was already substantial evidence in the record from experts and other witnesses regarding their relationship. Parents claim the juvenile court's ruling was error.

As an initial matter, we must address the agency's contention that this court lacks jurisdiction to consider this issue because parents failed to identify in their notice of

---

[4]     Parents join in each other's arguments. As such, we treat them collectively. (Cal. Rule of Court, rule 8.200(a)(5).)

[5]     A bonding study is an expert assessment of the nature and extent of the bond that exists between certain family members. (*In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1168.)

appeal the juvenile court's decision on May 2, 2013, to deny their request for a bonding study. As the record reflects, parents' notice of appeal described the order subject to appeal as follows: "May 2, 2013[.] [¶] Court ordered that the Motion for rehearing regarding Jurisdiction was not timely." Thus, while the notice correctly identified the May 2 order, it failed to specifically identify the court's ruling with respect to their request for a bonding study.

Parents counter with the well-established rule that an appellant's notice of appeal should be liberally construed so as to preserve the right of all parties to appeal. (E.g., Cal. Rules of Court, rule 8.100(a)(2); *Luz v. Lopes* (1960) 55 Cal.2d 54, 59.) They further point out that, generally, a notice of appeal will be deemed sufficient so long as the notice identifies the particular order from which the appeal is being taken. (*Morton v. Wagner* (2007) 156 Cal.App.4th 963, 967.) Here, the notice of appeal correctly identifies the underlying order of May 2, 2013, despite failing to identify the denial of the request for a bonding study.

We, however, see no need to belabor the notice issue given our relatively straightforward conclusion based on this record that the juvenile court's decision to deny parents' bonding study request was within the proper scope of discretion. (See *In re Richard C.* (1998) 68 Cal.App.4th 1191, 1197 [*Richard C.*] [a juvenile court's decision to deny a request for bonding study is reviewed for abuse of discretion]; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067-1068 [same].)

In particular, considering the record in a light most favorable to upholding the juvenile court's decision, as the law requires, we conclude the juvenile court could indeed have reasonably denied parents' request for a bonding study on the grounds that it was untimely and inappropriate. California case law instructs that, where, as here, a juvenile court has terminated reunification services and set a section 366.26 hearing to establish a permanent plan for a child, a parent's "right to develop further evidence regarding [his or] her bond with the child[] . . . approach[es] the vanishing point." (*Richard C., supra,* 68 Cal.App.4th at p. 1195.) The reason is that, once services are terminated, the focus of the dependency proceedings must shift away from preserving the natural parent-child

5

relationship and towards finding the child a stable and permanent alternative home. (*Id.* at pp. 1195-1196.)

In *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, for example, the Court of Appeal, Fifth District, relied on similar reasoning in addressing a parent's claim of a right to a bonding study after the child was removed from the home and reunification services were terminated. Concluding no such right existed, the court reasoned: "There is no requirement in statutory or case law that a court must secure a bonding study as a condition precedent to a termination order. . . . [A]lthough the preservation of a minor's family ties is one of the goals of the dependency laws, it is of critical importance only at the point in the proceeding when the court removes a dependent child from parental custody (§ 202, subd. (a)). [Fn. omitted.] Family preservation ceases to be of overriding concern if a dependent child cannot be safely returned to parental custody and the juvenile court terminates reunification services. Then, the focus shifts from the parent's interest in reunification to the child's interest in permanency and stability. [Citation.]" (*In re Lorenzo C.*, *supra*, 54 Cal.App.4th at pp. 1339-1340 [*Lorenzo C.*].)

We conclude the reasoning set forth in *Lorenzo C.*, as well as *Richard C.*, applies squarely to this case. As in those cases, here, when parents requested the bonding study, the juvenile court had already terminated reunification services and scheduled a permanency planning hearing for minor. Moreover, since then, this court has affirmed the juvenile court's order to do so in light of the substantial evidence in the record of parents' noncompliance with key aspects of their case plan. (*B.J. v Superior Court*, *supra*, A138336.) Thus, at the time of parents' bonding study request, the juvenile court was quite properly focused on minor's need for permanency and stability rather than parents' desire to preserve natural familial bonds. It is beyond dispute minor's foster family, with whom minor had developed a meaningful bond, was willing and able to provide him with a permanent and stable home and, in fact, had indicated a desire to adopt him. As such, the juvenile court's disinclination to order the bonding study at that point, and thereby return the case to the pre-permanency planning stage of family reunification, was appropriate. As our Legislature has made quite clear, juvenile courts

6

must whenever possible avoid lengthy and unnecessary delays so as to permit dependency cases to proceed expeditiously to permanency planning. (*Richard C.*, *supra*, 68 Cal.App.4th at p. 1197 ["[t]he Legislature did not contemplate . . . last minute [requests for bonding studies] to put off permanent placement"]; *Lorenzo C.*, *supra*, 54 Cal.App.4th at p. 1340 [the "section 366.26 hearing [is designed] to allow the trial court to avoid reconsidering issues previously decided in the dependency proceedings in order to expedite the permanent placement of the child"].)

Accordingly, we conclude the juvenile court acted reasonably in deciding it was unlikely a bonding study would have yielded significant additional evidence that would warrant any further delay in finding minor a permanent and stable home. We thus stand by its order to deny parents' request.

## II. Denial of Motion for Reconsideration regarding Jurisdiction.

Parents also moved the court to "reconsider the dependency finding and all subsequent orders in this matter on the ground that the court lacked subject matter jurisdiction under the [UCCJEA] and in light of new case law decided since this request was originally denied by the court on September 16, 2011." This "new case law" relied upon by parents to support their reconsideration request consisted of one case, *In re Gloria A.*, *supra,* 213 Cal.App.4th 476, which, according to parents, clarified that California is not a child's home state for purposes of the UCCJEA where, as here, the child was not living in California for six months immediately preceding the commencement of the case. The juvenile court denied this motion on the grounds that it was untimely and was not based on "any new law or new facts such that would cause the court, even on its own motion, to reconsider [the ruling]." This decision was wholly reasonable.[6]

---

[6] "There is a split of authority as to whether an order denying a motion for reconsideration is separately appealable. (*In re Marriage of Burgard* (1999) 72 Cal.App.4th 74, 80-81 [84 Cal.Rptr.2d 739].)" (*Morton v. Wagner, supra,* 156 Cal.App.4th at p. 968.) However, this issue was not raised by any party and we, thus, decline to enter into the legal fray, particularly where, as here, the underlying issue relates to subject matter jurisdiction.

Parents initially challenged the juvenile court's authority under the UCCJEA to exercise jurisdiction over minor in this dependency matter because, they argued, the court declined to exercise temporary emergency jurisdiction under Family Code section 3424, subdivision (a), and otherwise lacked subject matter jurisdiction under Family Code section 3421 because minor's home state of Mexico did not decline to exercise its jurisdiction over minor on the basis that California was a more appropriate forum (which the statute requires). Parents thus sought reversal of all findings and orders made by the juvenile court with respect to minor.

The juvenile court rejected parents' jurisdictional challenge and, on appeal, we affirmed. Specifically, we concluded the juvenile court complied with the relevant UCCJEA provision, section 3424, subdivision (b), which, we explained "applies where 'a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under [the UCCJEA].' Undisputedly, while the agency remained in regular contact regarding this case with the appropriate Mexican authorities (including the consulate and the DIF, Mexico's child protection agency), no child custody determination was made or proceeding initiated with respect to minor in Mexico. As such, under subdivision (b), 'a child custody determination made under this section becomes a final determination, if it so provides,' which in this case it did [fn. omitted.]" (*San Francisco Human Services Agency v. B.J., supra*, A136900, at pp. 9-10.) In other words, we concluded that Mexico was indeed minor's home state but that, because Mexico did not initiate a dependency proceeding with respect to minor and because a factual basis existed for the California court's continued exercise of jurisdiction over minor pursuant to the applicable UCCJEA provision (to wit, Fam. Code, § 3424, subd. (b)), the juvenile court's actions with respect to minor were authorized. On April 30, 2014, the California Supreme Court denied parents' petition for review of our decision. (*In re B.T.*, S217445 (April 30, 2014).)

In seeking reconsideration of the jurisdiction issue on the purported basis of new controlling legal authority, parents point to just one case, *In re Gloria A.*, *supra,* 213 Cal.App.4th 476, which, they say clarified Mexico, not California, was minor's home

8

state for purposes of the UCCJEA. However, our earlier decision was in fact based on the fact that Mexico was minor's home state. As we have just explained, this court simply held that, given Mexico's failure to initiate dependency proceedings (despite the DIF's awareness of and involvement in minor's case), and given the factual basis for the juvenile court's continued exercise of jurisdiction under Family Code section 3424, subdivision (b), the juvenile court's actions were legal. As such, parents' case does not provide any new legal authority of relevance to this matter, a valid basis for the juvenile court's denial of parents' request for reconsideration of its earlier ruling.[7] (Code Civ. Proc., §1008, subd. (a ); *Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368, 383 ["The statute dictates that such an application must be 'upon new or different facts, circumstances, or law.' In addition, case law interpreting section 1008 has specifically held that a moving party must give a satisfactory explanation for the previous failure to present the allegedly new or different evidence or legal authority offered in the second application"].

In addition, in parents' reply brief on appeal, they cite for the first time two additional examples of purported "new case law" – to wit, *In re Gino C*. (2014) 224 Cal.App.4th 959 and *In re A.M*. (2014) 224 Cal.App.4th 593. Of course, it goes without saying that bringing legal authority to the attention of the appellate court for the first time at such a belated juncture is improper. Not only was this authority never offered as support for parents' motion for reconsideration of the jurisdiction issue or otherwise brought to the juvenile court's attention, it was never brought to the attention of any other party to these proceedings, including the agency or minor's counsel, depriving them of any opportunity to address it.[8] As such, we decline to consider it here.

---

[7]   We also question whether *In re Gloria A.*, *supra,* 213 Cal.App.4th 476, qualifies as "new" within the meaning of Code of Civil Procedure section 1008, given that it was published well before this court affirmed the juvenile court's jurisdictional ruling on February 11, 2014, and before the California Supreme Court thereafter denied review on April 30, 2014.

[8]   Parents appear to have cited this authority for the first time when petitioning the California Supreme Court for Review, filed March 28, 2014 (after their opening briefs

9

Finally, while parents may be correct that the issue of subject matter jurisdiction must be addressed whenever it comes to the court's attention (*In re Gloria A., supra*, 213 Cal.App.4th at p. 481), this principle does not provide a party with license to continue to reassert the same jurisdiction issue without first complying with the mandatory statutory requirement under Code of Civil Procedure section 1008, subdivision (a), to demonstrate the existence of new, relevant facts or law that warrant the court's reconsideration of its earlier ruling. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107-1108 [notwithstanding the court's authority to reconsider interim rulings on its own motion, Code of Civ. Proc. § 1008 limits the parties' power to file repetitive motions with respect to a particular issue].) As we have just finished explaining, parents did not meet this requirement.

### III.    Summary Denial of Petition to Modify Order Terminating Services.

Parents contend the juvenile court abused its discretion by summarily denying their section 388 petition to modify the order terminating reunification services. With this order, parents sought six additional months of such services, as well as minor's return to their custody in Mexico. The governing law is not in dispute.

A parent seeking modification of a prior juvenile court order pursuant to section 388 need only " 'make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]' (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310 [19 Cal.Rptr.2d 544, 851 P.2d 826]; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1412-1414 [5 Cal.Rptr.2d 148].)" (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.) "There are two parts to the prima facie showing: The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529 [65 Cal.Rptr.2d 495].)" (*In re Anthony W., supra*, 87 Cal.App.4th at p. 250; *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.)

---

were filed), of this court's nonpublished opinion in Case No. A136900. As mentioned above, their petition for review was denied on April 30, 2014.

10

Further, the juvenile court must "liberally construe" the allegations in the section 388 petition in favor of granting a hearing to consider the parent's modification request. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) At the same time, however, "conclusory claims are insufficient to require a hearing. Specific descriptions of the evidence constituting changed circumstances is required. 'Successful petitions have included declarations or other attachments which demonstrate the showing the petitioner will make at a hearing of the change in circumstances or new evidence.' (*In re Anthony W.*, *supra*, 87 Cal.App.4th at p. 250.)" (*In re Ramone R.* (2005) 132 Cal.App.4th 1339, 1348.) Specific descriptions of evidence showing that revoking a previous order would be in the child's best interests is likewise required. A section 388 petition must not be granted if "[n]othing in . . . [the] petition rebuts the presumption that continued foster care [i]s in the best interests of the minor[]." (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1507.) In other words, " '[t]he prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition.' (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 [92 Cal.Rptr.2d 20]; *In re Edward H.* (1996) 43 Cal.App.4th 584, 593 [50 Cal.Rptr.2d 745] ['A "prima facie" showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited'].)" (*In re Brittany K.*, *supra*, 127 Cal.App.4th at p. 1505.)

On appeal, we review the juvenile court's summary denial of a section 388 petition for abuse of discretion. (*In re Anthony W.*, *supra*, 87 Cal.App.4th at p. 250; *In re Jeremy W., supra,* 3 Cal.App.4th at p. 1413.) "In general, 'when a court has made a custody determination in a dependency proceeding, ' "a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' [Citations.] (*In re Stephanie M.* [1994] 7 Cal.4th 295, 318.)" (*In re Aaron R.* (2005) 130 Cal.App.4th 697, 705-706.)

Here, parents' section 388 petition was based upon a report prepared by the DIF following a visit to parents' home in Mexico ("DIF report"). The DIF report was dated

11

July 15, 2013, several months after the March 28, 2013 hearing at which parents' reunification services were terminated and a permanency planning hearing was set. According to parents, "[the DIF report] document[ed] that the parents did indeed participate in family therapy (which was in dispute at the time of the 18-month-review trial) and also provid[ed] further evidence that the parents completed the majority of their reunification requirements." The matter of the section 388 petition was put on the calendar for August 22, 2013, the same day the permanency planning hearing was scheduled.

In summarily denying the section 388 petition on August 21, 2013, the day before the permanency planning hearing, the juvenile court found parents had failed to meet the statutory requirement to identify new evidence or a change of circumstances warranting modification of the previous order. At the hearing, the court then identified four reasons for its decision: (1) minor's aunt, Ms. F., who had in the past physically and mentally abused minor, remained at parents' home and there was no identified plan to remove her, (2) sanitation concerns continued, as the DIF report documented garbage and foul odors remained on the property, (3) information was lacking with respect to the nature and quality of the therapy parents were receiving in Mexico, and (4) most significantly, "[Mr. Brighting] is still accepted by the parents as an appropriate parental figure, and there is no plan or information . . . to remove this person for the minor's protection."

We affirm the juvenile court's order and findings as well-within the scope of its discretion. As the record reflects, in summarily denying parents' petition, the juvenile court was most concerned with the best interests of minor and, more specifically, the fact that, if he were returned to parents' care, he would still face significant risks to his safety and well-being. The court's concerns, based on the information that was and, more importantly, was not included in the DIF report, was a proper basis upon which to deny a hearing, particularly given that the day had already arrived for minor's permanency planning hearing. As other appellate courts have noted, "On the eve of a section 366.26 hearing, the child's interest in stability is the court's foremost concern, outweighing the parent's interest in reunification. Thus, a section 388 petition seeking reinstatement . . . of

12

reunification services must be directed at the best interest of the child." (*In re Ramone R.*, *supra*, 132 Cal.App.4th 1339, 1348-1349.) Where the section 388 petition is not so directed, a ruling that denies the petition without a hearing is appropriate. (*Ibid*. See also *In re Anthony W.*, *supra*, 87 Cal.App.4th at pp. 251-252 [the juvenile court properly denied a section 388 petition without a hearing where there was no showing that it was in the minors' best interests to return to the parent's custody]; *In re Zachary G., supra,* 77 Cal.App.4th at p. 808 [same].) The California Supreme Court is in agreement. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 317 ["[a]fter termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child"].)

Thus, given the juvenile court's valid concerns that parents had still not adequately addressed certain factors in their lives that could jeopardize minor's safety and well-being if he were returned to their custody, and given the case's readiness for permanency planning, we conclude summary denial of their section 388 petition was proper. Simply put, at this late juncture, the court was correct to find minor's interest in stability outweighed any interest parents had in reunification. (*In re Beatrice M*. (1994) 29 Cal.App.4th 1411, 1418; *In re Anthony W.*, *supra*, 87 Cal.App.4th at pp. 251-252. See also *In re C.J.W., supra*, 157 Cal.App.4th at p. 1081 [concluding that, given "there was no showing whatsoever of how the best interests of these young children would be served by depriving them of a permanent, stable home in exchange for an uncertain future," it was not "reasonably likely additional testimony would have persuaded the court to grant the section 388 petition[s]"].)

IV.     **Termination of Parental Rights.**

Parents lastly contend the juvenile court erred in terminating their parental rights upon finding by clear and convincing evidence that minor was adoptable and declining to

find that terminating parental rights would be detrimental to him. The governing law is, for the most part, not in dispute.

"At a permanency plan hearing, the court may order one of three alternatives: adoption, guardianship or long-term foster care. [Citation.] If the dependent child is adoptable, there is a strong preference for adoption over the alternative permanency plans. [Citations.]" (*In re S.B.* (2008) 164 Cal.App.4th 289, 296-297.)

"Once the court determines the child is likely to be adopted, the burden shifts to the parent to show that termination of parental rights would be detrimental to the child under one of the exceptions listed in section 366.26, subdivision (c)(1). [Citation]; but see § 366.26, subdivision (c)(1)(A), eff. Jan. 1, 2008.)" (*In re S.B., supra,* 164 Cal.App.4th at p. 297.) The fact that the juvenile court has continued a child's removal from parental custody and has terminated reunification services is a sufficient basis for terminating parental rights absent a compelling reason for determining such termination would be detrimental to the child due to the existence of one of the circumstances specified in section 366.26, subdivision (c)(1). (See *id.*; *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351-1352.)

In reviewing a decision to terminate parental rights, we uphold the juvenile court's factual findings so long as they are supported by substantial evidence. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.) In making this determination, we "do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts. Rather, we draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion. [Citation.] The appellant has the burden of showing the finding or order is not supported by substantial evidence. [Citation.]" (*Ibid.*) However, at the same time, most courts have also held that the determination of whether termination of parental rights would serve the child's best

interest in left to the juvenile court's discretion.[9] (See *In re Eric B*. (1987) 189 Cal.App.3d 996, 1005 [juvenile court's determination of child's best interests will not be reversed absent a clear abuse of discretion]; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.)

In this case, parents do not challenge the juvenile court's initial finding that minor is adoptable. Parents do challenge, however, the court's finding that terminating their parental rights would not be to minor's detriment based on the following statutory exceptions – the beneficial parent relationship exception and the beneficial sibling relationship exception under section 366.26, subdivisions (c)(1)(B)(i) and (c)(1)(B)(v), respectively. We address each exception in turn below.

### A.    Beneficial Parent Relationship Exception.

Parents contend they meet the requirements of the beneficial parent relationship exception because, consistent with the statutory language, they have "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (See § 366.26, subd. (c)(1)(B)(i).) We disagree for several reasons.

---

[9]    As our colleagues in the Sixth District persuasively explained: "In our view, both standards of review come into play in evaluating a challenge to a juvenile court's determination as to whether the parental or sibling relationship exception to adoption applies in a particular case. Since the proponent of the exception bears the burden of producing evidence of the existence of a beneficial parental or sibling relationship, which is a factual issue, the substantial evidence standard of review is the appropriate one to apply to this component of the juvenile court's determination. . . . [¶] The same is not true as to the other component of these adoption exceptions. The other component of both the parental relationship exception and the sibling relationship exception is the requirement that the juvenile court find that the existence of that relationship constitutes a '*compelling reason* for determining that termination would be detrimental.' (§ 366.26, subd. (c)(1)(B), italics added.) A juvenile court finding that the relationship is a 'compelling reason' for finding detriment to the child is *based* on the facts but is not primarily a factual issue. It is, instead, a 'quintessentially' discretionary decision, which calls for the juvenile court to determine the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption. [Citation.] Because this component of the juvenile court's decision is discretionary, the abuse of discretion standard of review applies." (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.)

15

Even accepting parents' contention that they successfully "maintained regular visitation and contact" with minor, the statutory provision also requires them to prove minor, if adopted, would be deprived of a beneficial parent-child relationship such that terminating their parental rights would cause detriment to *him*. Case law has adopted the following standard for making this showing: "When determining whether the exception applies to bar termination of parental rights, the court balances the strength and quality of the parent-child relationship in a tenuous placement against the security and sense of belonging that a stable family would confer on the child. However, if severing the existing parental relationship would deprive the child of 'a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' [Citation.] In other words, if an adoptable child will not suffer great detriment by terminating parental rights, the court must select adoption as the permanency plan. (See § 366.26, subd. (c)(1).)" (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 229; see also *In re Beatrice M*., *supra*, 29 Cal.App.4th at p. 1419 [" 'Interaction between [a] natural parent and child will always confer some incidental benefit to the child . . . . The exception applies only where the court finds regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent.' (*In re Autumn H.* [(1994)] 27 Cal.App.4th [567,] 575.)"].) This required showing is consistent with the concept, already discussed at length above, that, at this late juncture in dependency proceedings, the court must focus on the child's need for permanency and stability rather than the parents' interest in reunification. (E.g., *In re Stephanie M., supra,* 7 Cal.4th at p. 317.)

Here, the juvenile court found the beneficial parent-child relationship exception inapplicable. In doing so, the court properly focused on the best interests of minor, including the fact that he was receiving beneficial and, to a large extent, successful therapeutic and other services in his placement. The court pointed out minor had made significant developmental and behavioral improvements since coming into the dependency system. At the same time, the record confirmed that parents had failed to complete their case plan, including the requirements that they acknowledge and address

16

minor's significant developmental and psychological issues, and had also failed to fully address the underlying issues leading to minor's removal, including their own responsibility for exposing minor to risk of harm from individuals such as his aunt, Ms. F., and Mr. Brighting. The court thus concluded under the circumstances of this case that the permanent plan of adoption should be implemented. The record supports the court's conclusion, which, as explained above, was left to its sound discretion. (See *In re Eric B.*, *supra,* 189 Cal.App.3d at p. 1005 [juvenile court's determination of child's best interests will not be reversed absent a clear abuse of discretion].)

While we do not question parents' claim to have a bond with minor, California law requires more – to wit, it requires a "significant, positive, emotional" bond. And, in this case, given the lingering concerns, described above, regarding parents' ability to care for and protect minor from harm, the juvenile court could properly conclude this standard was not met. (*In re Jasmine D.*, *supra*, 78 Cal.App.4th at pp. 1351-1352 [where, despite successful visitation, parent had "made no steps toward overcoming the problems leading to [minor's] dependency," the beneficial parent relationship exception did not apply]. Cf. *In re S.B., supra*, 164 Cal.App.4th at p. 300, italics added, [court erred in declining to apply the beneficial parental relationship exception where the record established "[father's] devotion to S.B. was constant, as evinced by his *full compliance* with his case plan and continued efforts to regain his physical and psychological health"].) Bolstering the court's conclusion were the opinions of several mental health professionals that minor's attachment to parents was, in fact, problematic, as evidenced by his "guarded attitude" and his "use of tangible objects as a buffer to take the place of meaningful social interactions" during visitation.[10] (*In re Dakota H., supra*, 132 Cal.App.4th at p. 229; *In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) And, finally, there is undisputed evidence that minor, by then almost eight years old, was thriving under the care of his

---

[10] While parents opine that minor's behavior was a result of the difficulties of conducting visitation via Skype, the law requires us to view the evidence in a light most favorable to upholding the juvenile court's findings. (*In re L.Y.L., supra,* 101 Cal.App.4th at p. 947.)

foster/prospective adoptive family, with whom he had lived nearly three years. On this record, the juvenile court's rejection of the beneficial parent relationship exception as a basis for maintaining parental rights must stand.

### B. Beneficial Sibling Relationship Exception.

Parents' remaining contention is that section 366.26, subdivision (c)(1)(B)(v), the so-called beneficial sibling exception, precludes termination of their parental rights. This statutory exception applies in cases where it would be detrimental to the child to terminate parental rights because: "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v).) "[T]he application of this exception will be rare, particularly when the proceedings concern young children whose needs for a competent, caring and stable parent are paramount. (*In re L.Y.L., supra,* 101 Cal.App.4th at p. 950.)" (*In re Valerie A*. (2007) 152 Cal.App.4th 987, 1014.)

Here, considering the nature and extent of minor's and his sister's (X.'s) relationship, we cannot conclude their relationship would face substantial interference if minor's permanent plan of adoption were implemented. Rather, the record reflects only that, while minor and his sister appeared to enjoy the family's twice weekly visits via Skype, they had lived together in Mexico just two years before parents sent minor to the United States with Mr. Brighting. Moreover, at the time of minor's departure, he was just five years old (and developmentally much younger), while sister was just two years old. These circumstances undermine any finding that the siblings had significant common experiences or close, strong bonds such that terminating parental rights would be detrimental to minor. (§ 366.26, subd. (c)(1)(B)(v); see also *In re L.Y.L., supra,* 101 Cal.App.4th at p. 952 ["Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended. If the relationship is not sufficiently significant

18

to cause detriment on termination, there is no substantial interference with that relationship"].)

Finally, and in any event, "even if a sibling relationship exists that is so strong that its severance would cause the child detriment, the court then weighs the benefit to the child of continuing the sibling relationship against the benefit to the child adoption would provide." (*In re L.Y.L., supra,* 101 Cal.App.4th at pp. 952-953.) Here, for all the reasons set forth above, the record supports the juvenile court's finding that returning minor to parents would be detrimental, and that adoption was in his best interest. The rather scant evidence of a bond between minor and his natural sister simply did not outweigh the evidence of a bond between minor and his foster/prospective adoptive family, including his bond with their young son, who was close in age and considered by minor his "brother."[11] This family undisputedly wished to adopt minor and could provide him a stable, healthy, and loving home, just as they had done for him for nearly the past three years. As such, the juvenile court did not abuse its discretion in finding parents failed to meet the standard for the beneficial sibling relationship exception.

Accordingly, we affirm the juvenile court's order to terminate parental rights and select adoption as minor's permanent plan.

---

[11]     We acknowledge parents' contention that more evidence may have been revealed by the bonding study the court declined to order. However, as the agency notes, parents could have, but did not, offer other, more substantial, evidence regarding a sibling bond, such as testimony from the family members themselves.

## DISPOSITION

The juvenile court's findings and orders of May 2, 2013, August 21, 2013, and August 22, 2013 are affirmed.


_____
Jenkins, J.


We concur:


_____
Pollak, Acting P. J.


_____
Siggins, J.