Filed 5/18/23  In re K.C. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re K.C. et al., Persons Coming Under the Juvenile Court Law. | C096142 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, Plaintiff and Respondent, v. T.C., Defendant and Appellant. | (Super. Ct. Nos. JD241259, JD241261, JD241262, JD241263 & JD241387) ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING [CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the nonpublished opinion filed herein on April 21, 2023, be modified as follows:

1. At page 9, delete the sentence that reads, "However, because the restraining order appears to still be in effect, creating an apparent conflicting order, we will direct the juvenile court to vacate or modify the restraining order as necessary to effectuate its exit orders.  (§ 213.5, subd. (d).)" and replace it with, "However,

1

because the restraining order appears to still be in effect, creating an apparent conflicting order, we will direct the juvenile court to consider, in the first instance on remand, vacating or modifying the restraining order as necessary to effectuate its exit orders.  (§ 213.5, subd. (d).)"

2. At page 21, delete the sentence that reads, "We direct the juvenile court to vacate or modify the restraining order as to Father J. as necessary to effectuate its exit orders as to minor K.C." and replace it with, "On remand, we direct the juvenile court to consider whether it must vacate or modify the restraining order as to Father J. as necessary to effectuate its exit orders as to minor K.C."

This modification changes the judgment.  Appellant's petition for rehearing is denied.

BY THE COURT:

\_\_\_\_\_\s\_____,
BOULWARE EURIE, J.


\_\_\_\_\_\s\_____,
McADAM, J.[1]


I would grant the petition for rehearing.


\_\_\_\_\_\s\_____
DUARTE, Acting P.J.

---

[1]      Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2

Filed 4/21/23  In re K.C. CA3 (unmodified opinion)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re K.C. et al., Persons Coming Under the Juvenile Court Law. | C096142 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>T.C.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD241259, JD241261, JD241262, JD241263 & JD241387) |

Appellant T.C. (mother), the mother of minors L.C., K.C., K.R., X.R., and H.R. (collectively, the minors), appeals from the juvenile court's jurisdictional and dispositional orders.  (Welf. & Inst. Code, §§ 300, 395).[2]  Mother contends:  (1) the

---

[2]     Undesignated statutory references are to the Welfare and Institutions Code.

1

juvenile court erred in awarding full custody of K.C. to her father; (2) the juvenile court erred in awarding full custody of X.R. and H.R. to their father; (3) the juvenile court lacked subject matter jurisdiction over L.C. under the Uniform Child Custody Jurisdiction and Enforcement Act (Fam. Code, § 3400 et seq.) (UCCJEA); (4) the Sacramento County Department of Child, Family and Adult Services (Department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA), because the Department did not contact extended family members to inquire about the ICWA and failed to contact certain tribes claimed by the parents; and (5) if this court reverses the jurisdictional and disposition orders as to any one or more siblings, reversal of the orders as to all the siblings is warranted.[3]

Regarding the jurisdictional issue as to L.C., we will reverse and remand with directions to the juvenile court to comply with the provisions of the UCCJEA. We will also direct the juvenile court to vacate its ICWA finding and enter new findings as to L.C., after further ICWA compliance proceedings. We will affirm the remaining orders.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Initial Dependency Proceedings*

Although we give a general recitation of the factual and procedural background, facts specific to the ICWA and UCCJEA issues will be summarized in the discussion.

---

[3]  Mother also claims that to the extent her claims were not properly preserved, she received ineffective assistance of counsel. We do not reach mother's ineffective assistance of counsel claims because we do not conclude that her claims are forfeited.

On April 13, 2021, the Department filed a petition alleging that T.W. (age 15), H.R. (age 13), X.R. (age 12), K.R. (age 10), C.W. (age four),[4] and K.C. (age one) came within the provision of section 300, subdivision (a), serious physical harm, and section 300, subdivision (b)(1), failure to protect. The petition alleged that mother had an untreated anger management problem and utilized corporal punishment, including hitting, punching, shooting the minors with a BB gun, submerging X.R.'s head in dirty dish water, and slamming the minors' heads into a wall. On June 21, 2021, the Department filed another petition for juvenile dependency jurisdiction over a seventh child, L.C., who was born two weeks after the initial petition was filed.[5]

At the initial hearing on April 15, 2021, it was discovered that mother had left California with five of the six children and was at that time in Santa Rosa, New Mexico, driving to Texas. The sixth child, H.R., was in the care of the maternal grandmother. The detention hearing was continued several times because the juvenile court repeatedly ordered mother to return the children to California, or alternatively, to surrender the children to Child Protective Services in Texas.

At the continued detention hearing on April 21, 2021, mother disclosed that she was pregnant and refused to return to California. H.R. was detained, and H.R's father, He.R. (Father R.), was designated provisionally presumed father as to H.R. At that time, H.R. was in the care of the paternal aunt, Shalonda C. The juvenile court set a combined jurisdiction and disposition hearing.

On April 27, 2021, mother surrendered the five traveling children to Child Protective Services in Texas, and the minors were ordered detained and returned to

---

[4]    T.W. and C.W. are not subject minors in this appeal. We will refer to them as the two non-subject minors.

[5]    L.C. was referenced in the petition as H.C., rather than his legal name. This error was corrected in a subsequent petition.

California. Newborn L.C. remained in mother's care. Father R. was designated provisionally presumed father for X.R.

The Department filed a jurisdiction/disposition report recommending the juvenile court sustain the section 300, subdivisions (a) and (b)(1) allegations. On June 3, 2021, the juvenile court held a combined jurisdiction and disposition hearing as to K.C., K.R., X.R., H.R., and the two non-subject minors. The alleged father of K.C., Ke.J. (Father J.) appeared. Te.G. (Father G.), was found to be the adjudicated father for K.R. The matter was set for a contested jurisdiction/disposition hearing.

On July 22, 2021, the Department filed an addendum report. The report recommended the children be removed from mother's custody, and that she be ordered to participate in reunification services. The Department did not recommend services for Father G. as to the minor, K.R., because the Department mistakenly assessed that he remained an alleged father at that time. The Department did not recommend placement of X.R. with Father R. due to concerns X.R. would run away after previously running away from her aunt's home and making statements indicating "she will run." The Department recommended that she be placed under its care and supervision until an appropriate placement was determined. The Department further recommended that H.R. be placed with Father R. in his sole legal and physical custody, and the dependency terminated as to that child.

At the combined jurisdiction and disposition hearing on August 5, 2021, the juvenile court found Father G. the presumed father of K.R. and Father J. the presumed father of K.C. The juvenile court authorized an extended visit between H.R. and Father R. The court then continued the matter.

On September 2, 2021, the Department filed an addendum report indicating that on June 18, 2021, after safety planning, the Department had allowed the minor X.R. to go on an extended visit with Father R., and on August 20, 2021, X.R. was enrolled in school and had not absconded from her father's care. The juvenile court ordered both H.R. and

4

X.R. placed in the custody of Father R., under the supervision of the Department, pending the outcome of the contested jurisdiction hearing.

On September 5, 2021, mother was arrested in California "for burglary and fighting with [l]aw [e]nforcement." Mother remained incarcerated at the Sacramento County jail. She was subsequently placed on holds under sections 5150 and 5250, and finally a 30-day hold. Mother was not present at a subsequent hearing and based on statements from Sacramento Sheriff's Deputy Rodriguez regarding the mother's mental health condition, the court appointed a Guardian Ad Litem (GAL) for the mother. At a continued hearing, after hearing testimony from mother, the juvenile court relieved the GAL.

The Department filed an addendum report clarifying its dispositional recommendations for each of the children. As to K.C., the Department recommended removing her from mother and placing her with the nonoffending, noncustodial parent, Father J., with sole legal and physical custody, and terminating dependency. As to X.R., the Department recommended placing her with the nonoffending, noncustodial parent, Father R., with sole legal and physical custody, and terminating dependency.

On December 14, 2021, the juvenile court sustained the section 300 petitions as to K.C., K.R., X.R., H.R., and the two non-subject minors. The court authorized an extended visit between K.C. and Father J. The court continued disposition.

On February 28, 2022, at the disposition hearing, the juvenile court also removed K.C. from mother,[6] placed her with Father J., and terminated dependency. As to X.R.

---

[6]     The court found that there was a clear and convincing evidence justifying removal under section 361, subdivision (c) (1) of "substantial danger to the physical health, safety, protection or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's, guardian's, or Indian custodian's physical custody."

and H.R., the court removed both minors from mother, placed them with Father R., and terminated dependency. As to K.R., the court removed the minor from mother and Father G. and ordered reunification services for the parents.

On September 20, 2022, the juvenile court ordered K.R. to remain in out-of-home placement and ordered reunification services continued for mother and Father G.[7]

DISCUSSION

I

*Custody Order as to K.C.*

Mother contends the juvenile court erred in placing the minor, K.C., in her father's (Father J.'s) physical custody because the placement was detrimental, the juvenile court erred in terminating dependency jurisdiction, the order giving Father J. sole physical custody was not in the minor's best interest, and the juvenile court erred in ordering that the father would have control over mother's visitation with the minor. We disagree.

Under section 361.2, subdivision (a), a minor should be placed with a noncustodial parent who desires custody unless there is clear and convincing evidence "that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a); *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1829.) "Section 361.2, subdivision (a) does not automatically exclude from consideration for placement a noncustodial parent who has a history of incarceration,

---

[7] On April 7, 2023, mother's appellate counsel filed a letter to update this court on the status of further proceedings below. The status letter reports that following hearings on February 15, 2023, the juvenile court issued orders and findings terminating reunification services for mother as to L.C. and setting a selection and implementation hearing under section 366.26. Additionally, the court denied mother's section 388 petition seeking return of K.R., L.C., and the two non-subject minors to her care and custody. Finally, the status letter reports that the court also set a further ICWA compliance hearing, which has since been continued. These developments do not moot the current appellate challenges or prevent the court from granting effective relief. (*In re N.S.* (2016) 245 Cal.App.4th 53, 58.)

6

institutionalization or prior involvement with child dependency proceedings. Instead, it directs the court to place the child with the parent unless placement would be detrimental to the child." (*In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1504.) Section 362.4 authorizes the juvenile court, when terminating jurisdiction, to make custody and visitation orders that will be transferred to a family court file and remain in effect until changed by the superior court. (§ 362.4; *In re Roger S.* (1992) 4 Cal.App.4th 25, 30.)

"We normally review the juvenile court's decision to terminate dependency jurisdiction and to issue a custody (or 'exit') order pursuant to section 362.4 for abuse of discretion (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318) and may not disturb the order unless the court ' " 'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].' " ' "[8] (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300-301.)

Here, the removal of K.C. from mother and placement with Father J. was not detrimental to K.C. Mother had significant substance abuse and mental health issues and a well-documented history of physical abuse of the minors. The juvenile court sustained the petition alleging that K.C. had suffered or was at substantial risk of suffering serious physical harm inflicted non accidentally by mother. On December 14, 2021, K.C. was released to Father J. at the Department's recommendation and Father J.'s request. Mother objected but did not provide any evidence disputing the Department's assessment under section 361.2. Mother asserts that placement with Father J. was detrimental based on the fact that she had obtained an active domestic violence restraining order protecting

---

[8]     Mother contends, incorrectly, the juvenile court's section 362.4 order is subject to substantial evidence review. (See *In re Stephanie M., supra*, 7 Cal.4th at p. 318 [proper standard of review is abuse of discretion].) As a practical matter, however, the difference between the two standards of review (substantial evidence and abuse of discretion) in these circumstances is " 'not significant.' " (*In re C.B.* (2010) 190 Cal.App.4th 102, 123; see *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351 [same].)

7

herself and the minor, K.C., from Father J. prior to the juvenile court taking jurisdiction over the child.[9] The reasons for the restraining order are not elucidated in the record, although the jurisdiction/disposition report includes one reference to an incident in 2020 wherein Father J. refused to return K.C. to mother's care. The restraining order will expire on October 26, 2025. However, Father J. has no criminal history in California.

There was no evidence that Father J. ever harmed K.C. The Department evaluated Father J. and recommended placing K.C. with him as the nonoffending, noncustodial parent. The Department noted there was no evidence that the placement of K.C. with her father would pose a risk to her health or safety. Father J. was employed and identified several supportive family members. He had a prior inconclusive referral to the Department based on mother's 2020 report that he refused to return K.C. to her care, noting that his home appeared "uninhabitable." However, during a subsequent inspection of Father J.'s current home in the case at hand, the social worker observed that his home was cluttered, but in the process of being cleaned, and there were no safety threats. Father has no other known history with child protective services in California. Father J. agreed to a safety plan to maintain a lock on the back door to prevent K.C. from having access to his outdoor marijuana plants.

We recognize the seriousness of the domestic violence restraining order against Father J. and that such an active restraining order may give a juvenile court pause in granting custody to the restrained person under section 361.2. However, without any additional evidence of detriment to K.C., it cannot be established on this record that the juvenile court made an arbitrary, capricious, or patently absurd determination based on the evidence before it. Instead, the evidence supports the removal of K.C. from mother

---

[9] We note that the presumption against awarding custody to restrained persons under Family Code section 3044 is not applicable in dependency proceedings. (*In re C.M.* (2019) 38 Cal.App.5th 101, 108-109.)

8

and placement with Father J. to protect the minor from mother. However, because the restraining order appears to still be in effect, creating an apparent conflicting order, we will direct the juvenile court to vacate or modify the restraining order as necessary to effectuate its exit orders. (§ 213.5, subd. (d).)

## II

### *Custody Order as to X.R. and H.R.*

Mother contends the juvenile court erred in placing the minors, X.R. and H.R., in Father R.'s physical custody because the placement was detrimental, the juvenile court erred in terminating dependency jurisdiction, the order giving the father sole physical custody was not in the minors' best interest, and the juvenile court erred in ordering that the father would have control over appellant's visitation with the minors. We disagree.

As with Father J., mother again raises her prior domestic violence restraining order against Father R. as evidence that placement of the minors with him was detrimental, even though the restraining order against Father R. had expired by the time that the juvenile court issued its custody order. On February 23, 2021, Father R. discussed the restraining order against him, indicating he had "attempted to get custody of his children, H.R. and X.R. several times" but had been unable to do so due to the restraining order. He claimed that mother "plays games" such as allowing him to see the children when she feels like it "unless she is upset and wants to use the restraining order as an excuse to keep his children from him." The restraining order in question was issued on December 15, 2016, and the protected persons are mother and the minors H.R. and X.R. Concerning the restraining order, the social worker wrote: "[T]here is no evidence the father abused the children or threatened the children. The application reveals the mother expressed as one of her concerns is that the father will abscond with the children and take them out of state, particularly to Arizona or Texas." Father claimed that the alleged domestic violence did not occur, but he did not contest the restraining order because he thought it would prevent mother from contacting him. On November 8, 2021, the

9

juvenile court issued an amended restraining order prohibiting Father R. from contacting, directly or indirectly, mother, H.R., and X.R., except for "peaceful contact with the children . . . as required for court-ordered visitation of the children, . . . unless a criminal protective order says otherwise." The order was modified to award father physical custody, and mother legal custody, and visitation for mother pending the next court order. The restraining order was set to expire on December 14, 2021, and the record does not indicate that it was extended.

For the same reasons we have addressed with respect to Father J., the removal of H.R. and X.R. from mother and placement with Father R. was not detrimental to the minors. Mother had significant substance abuse and mental health issues and a well-documented history of physical abuse of the minors. The juvenile court sustained the petition alleging that H.R. and X.R. had suffered or was at substantial risk of suffering serious physical harm inflicted non accidentally by mother. The Department evaluated Father R. and recommended placing H.R. and X.R. with him as the nonoffending, noncustodial parent. While mother correctly points out that father has a criminal record of several convictions in California between 2005 and 2009, there was also a report indicating that he is currently licensed through the Resource Family Approval Program (RFA), approved by another county. Further, the Department reported: "[Father R.] has shown himself to be a capable parent in that he is currently providing for the appropriate care and supervision of two of the child's half-siblings, the father has an RFA approved home, and the child [H.R.] has repeatedly expressed his desire to be placed with father."

By the time of the disposition hearing, X.R. and H.R. had been living with Father R. for nearly seven months, and the Department did not have any concerns regarding this placement. Indeed, both X.R. and H.R. were enrolled in school while in Father R.'s care and were doing well. H.R. expressed that he wanted to be placed with Father R. While X.R. initially expressed that she would run away if placed with

Father R., as she did while placed with her aunt, X.R.'s academic performance began to improve in Father R.'s care.

The Department recommended placement with Father R. and dismissal of the dependency as to H.R. While Father R. admittedly used marijuana, he agreed to a safety plan not to use marijuana in the home or transport a child while under the influence of marijuana. The evaluating social worker stated, "Though there is a Restraining Order against the father, which identifies the children, X.R. and H.R. as the protected persons, there is no evidence the father abused the children or threatened the children." Additionally, the restraining order expired on December 14, 2021, prior to entry of the dispositional and jurisdictional orders at issue in this matter. We recognize that the expired restraining order and Father R.'s criminal background indicate that he has a problematic history but without additional evidence of detriment to X.R. and H.R., the evidence is not conclusive. We cannot find that the juvenile court made an arbitrary, capricious, or patently absurd determination based on the evidence before it. Instead, the evidence supports the removal of X.R. and H.R. from mother and placement with Father R. to protect them from mother.

III

*The Uniform Child Custody Jurisdiction Enforcement Act*

A. *Additional Background*

The initial hearing on the first petition for L.C. took place on June 24, 2021. The detention report stated that mother denied there was a baby named L.C. born in Texas. The Department contacted a local Texas hospital but was unable to locate any information regarding the birth of the baby. However, a Texas social worker reported he went to mother's home and observed the baby on April 29, 2021, reporting that mother had supplies for the baby and the "baby looked good." Thus, Texas Child Protective Services closed its case. The initial hearing was continued for the juvenile court to communicate with a judge in Texas. At the continued detention hearing for L.C. on

11

July 22, 2021, the juvenile court ordered Texas to be the appropriate jurisdiction for the minor and dismissed the petition without prejudice.

Prior to her arrest on September 5, 2021, mother had left the infant, L.C., in the care of a friend in California, who as it turns out could not care for the child. L.C. was taken into protective custody, and the Department filed a new petition as to L.C. alleging jurisdiction under section 300, subdivisions (b) and (j).

On September 23, 2021, the juvenile court held an initial hearing as to L.C. on a newly filed second petition. A continued detention hearing for L.C. took place on October 7, 2021. The court asserted temporary emergency jurisdiction of L.C. under the UCCJEA. The court and counsel agreed the court would communicate with the judge in Texas as to UCCJEA.

On October 28, 2021, at a combined jurisdiction and disposition hearing as to L.C. before a different judicial officer, mother's counsel asserted, "the child is a resident of Texas," and asked for the minor to be returned to her care. All counsel agreed that the previous judicial officer had "indicated that Texas was not taking jurisdiction and that jurisdiction would stay here in California."

On December 9, 2021, the Department filed a jurisdiction/disposition report as to L.C. The report recommended the removal of the minor from mother and to offer her reunification services.

On February 28, 2022, at the jurisdiction and disposition hearing as to L.C., the juvenile court sustained the petition, removed the minor from mother, adjudged the minor a dependent child of the juvenile court, ordered an updated case plan be prepared, ordered reunification services, and issued a dispositional order adopting the Department's proposed findings and orders. The Department subsequently filed an informational memorandum on March 10, 2022, with an updated case plan for mother's reunification services, as directed.

12

*B. Analysis*

Mother contends that reversal of the dispositional and jurisdictional orders is required as to L.C. because the juvenile court only had emergency subject matter jurisdiction under the UCCJEA given that the minor's home state was Texas. The Department contends that the court's emergency jurisdiction ripened into permanent jurisdiction and California became L.C.'s home state. We disagree.

The UCCJEA "governs dependency proceedings and is the exclusive method for determining the proper forum to decide custody issues involving a child who is subject to a sister-state custody order." (*In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1096.) The UCCJEA is designed to avoid jurisdictional conflicts between states and relitigation of custody decisions, promote cooperation between states, and facilitate enforcement of another state's custody decrees. (*In re Gloria A.* (2013) 213 Cal.App.4th 476, 482.) "With certain exceptions . . . 'once the court of an appropriate state [citation] has made a "child custody determination," that court obtains "exclusive, continuing jurisdiction . . . ." [Citation.]' [Citations.] As such, the court of another state, including California, '[c]annot modify the child custody determination [citations]' and '[m]ust enforce the child custody determination [citations.]' " (*In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1040 (*Sanchez*); see also Fam. Code, § 3423.) This rule does not, however, prevent another state from exercising temporary emergency jurisdiction. "[E]ven when UCCJEA jurisdiction rests with another state or country, . . . a California court may exercise temporary jurisdiction if the child is present in this state and, as relevant here, the exercise of such jurisdiction is 'necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to, or threatened with, mistreatment or abuse.' ([Fam. Code,] § 3424, subd. (a).)" (*Sanchez*, at pp. 1040-1041.) When exercising this jurisdiction, however, this court must immediately communicate with the other court to determine whether the other state wishes to assert

13

jurisdiction under Family Code section 3421 and commence proceedings to protect the child.  (Fam. Code, § 3424, subd. (d); *In re A.M.* (2014) 224 Cal.App.4th 593, 598.)

In the instant case, after having exercised temporary emergency jurisdiction, the juvenile court was required to act in accordance with the UCCJEA before making anything other than temporary orders.  Following the first petition involving L.C. on July 22, 2021, after a discussion between the California juvenile court and the Texas juvenile court, the State of Texas was found to be the appropriate jurisdiction for the minor under the UCCJEA.  The Department points out that in subsequent proceedings after the second petition was filed, all counsel agreed that the previous court had "indicated that Texas was not taking jurisdiction and that jurisdiction would stay here in California."  To the extent this is accurate, there is no supporting documentation in the record regarding UCCJEA compliance other than the recollection of counsel at the hearing.  This is insufficient to show compliance.  The Department's contention that emergency jurisdiction continued beyond the detention hearing because the risk of harm which created the emergency was ongoing is not persuasive.  While it is true that initially mother was arrested and hospitalized, the juvenile court had ample time to confer with the Texas juvenile court and comply with the UCCJEA following her appearance and prior to disposition.  It is clear the California juvenile court intended to confer with the Texas juvenile court because during a continued detention hearing in October 2021, the court and counsel agreed the court would communicate with the judge in Texas as to the UCCJEA.  However, it is not clear from the record that this ever occurred.  Because the court had only temporary emergency jurisdiction and the record does not show that the juvenile court substantially complied with the UCCJEA, reversal and remand are required.

IV

*ICWA*

*A.     Additional Background*

At the initial hearing on April 15, 2021, the juvenile court inquired about mother's ancestry, and she claimed to have Native American ancestry in two tribes and would check the names.  The Department filed an addendum report indicating mother identified the Nde Kai Yah Shima Nation tribe.  However, the Department could not verify the Nde Kai Yah Shima Nation tribe was a federally recognized tribe.  No other tribes were identified by mother.

On April 26, 2021, mother filed a Parental Notification of Indian Status (ICWA-020) form indicating, "I may have Indian ancestry" but no specific tribes were identified. Father R., the presumed father of X.R. and H.R., filed an ICWA-020 form indicating he had no Native American ancestry as far as he knew.  Counsel for Father G., the adjudicated father of K.R., indicated he may have Indian heritage, specifically Cherokee heritage.  The juvenile court ordered a further inquiry as to Father G.  On July 7, 2021, counsel for Father J., the presumed father of K.C., filed an ICWA-020 indicating, "Cherokee or Blackfoot" heritage.  At a subsequent hearing, when asked about whether she had Native American ancestry, mother claimed she had Cherokee, Nde Kai Yah Shima, and Pima heritage.  At a hearing on August 5, 2021, Father G. claimed he does not have Native American ancestry.  No inquiry was reportedly done with respect to the relatives of Father G.  On December 14, 2021, the court found the minors K.C., K.R., X.R., and H.R. "may []be Indian children."

On February 28, 2022, at the jurisdiction and disposition hearing, the juvenile court adopted a finding that "[t]he child, L.C., is not an Indian child."  None of the dispositional orders as to the elder four minors, K.C., K.R., X.R., and H.R., reflect a finding regarding the ICWA.

15

On September 20, 2022, as to the remaining dependent minors, K.R. and L.C., the juvenile court ordered the Department to prepare an ICWA report and set an ICWA compliance hearing. The Department filed an ICWA compliance report reflecting efforts of further inquiry. On December 15, 2022, a continued ICWA compliance hearing was held, and the court again continued the matter.

B.     *Analysis*

Mother contends the Department and the juvenile court failed to comply with their initial duty of inquiry under section 224.2, subdivision (b), including the duty to inquire of the minors' relatives, as well as the duty to inquire and send notice to the possible tribes listed by mother. The Department concedes the inquiry was inadequate but contends that as to K.R. and L.C., the remaining minors in the dependency, substantial evidence shows the court has already ordered a further inquiry and scheduled an ICWA compliance hearing. As to K.C., X.R., and H.R., the Department contends there is no reversible ICWA error because the minors were placed with their respective noncustodial fathers. We agree with the Department's latter argument and conclude the ICWA issue is not yet ripe as to K.R. because the court did not make an ICWA finding. As to L.C., we will vacate the court's ICWA finding and direct it to make a new finding.

As this court recently explained: " 'The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." [Citation.]' (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an ' "Indian child" ' as a child who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).) The juvenile court and the social services department have an affirmative and continuing duty, beginning at initial contact, to

16

inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)" (*In re G.A.* (2022) 81 Cal.App.5th 355, 360, review granted Oct. 12, 2022, S276056.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

Mother cites section 224.2, subdivision (b), which imposes a more extensive duty to inquire about Indian ancestry if a child is placed in the temporary custody of a welfare department (§ 306) or probation department (§ 307): "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b).)

The Department does not dispute mother's claim that it made no inquiry of the minors' extended family members despite frequent contact with some of those relatives. The Department further concedes it failed to contact the Pima tribe regarding mother's

17

heritage. However, the Department asserts that because the juvenile court ordered the Department to prepare a "full ICWA report" for the remaining minors in the dependency, K.R. and L.C., the court has already ordered a further inquiry and any error is not prejudicial. We note the court's order that the Department prepare an ICWA report did not require the Department to further inquire regarding the minors' ancestry and notice appropriate tribes. Indeed, in response to this order, the Department filed an ICWA report that does not disclose further contacts with any of the minors' extended relatives except the maternal grandmother, does not include paternal family information for K.R., does not describe what information was provided to the Cherokee tribes regarding the parents' ancestry and family members, and does not include any attempts to inquire about whether mother has Pima heritage, as she claims, or to notice any Pima tribes. Given the Department's concession and the remedial purpose underlying the ICWA, and related California law intended to protect third party rights, as to L.C. we apply the analytical framework set forth by the California Supreme Court in *In re A.R.* for assessing harm and we conclude the error is prejudicial. (*In re A.R.* (2021) 11 Cal.5th 234, 252-254 [determining whether an error is prejudicial requires viewing the error through the lens of the remedial purpose of the law at issue].) While the juvenile court may have impliedly vacated its finding as to L.C. when the court ordered the Department to prepare an ICWA report and set an ICWA compliance hearing, to the extent the court did not expressly vacate the ICWA finding, we will direct the court to vacate its finding and make a new finding as to L.C.

As to K.R., because the juvenile court made no final ICWA ruling at or before the challenged dispositional hearing as to whether ICWA applied to this minor, mother's claim is premature. That is, ICWA issues are not ripe for review. " 'Ripeness' refers to the requirements of a current controversy." (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 59.) An issue is not ripe for review unless and until it is "sufficiently concrete to allow judicial resolution even in the absence of a precise factual

18

context." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170; see *id.* at pp. 170-172.) Because the minor's dependency case is still ongoing, any perceived deficiencies with ICWA inquiry and noticing may still be resolved during the normal course of the ongoing dependency proceedings. Therefore, we decline mother's invitation to assess the adequacy of the ICWA inquiry and noticing process that is, based on our assessment of the record, still ongoing as well. (*In re M.R.* (2017) 7 Cal.App.5th 886, 904 [ICWA claim was premature where no final ICWA ruling was made at the dispositional hearing].) However, because it appears on this record that, at a minimum, further inquiry is required of mother and the fathers' purported tribes and any known relatives, we encourage the juvenile court and the Department to ensure full compliance with all applicable ICWA statutes as early in the remainder of the proceedings as possible.

As to K.C., X.R., and H.R., the Department contends there is no reversible error because these minors were placed with their respective fathers. We agree with the Department that the ICWA's notice requirements do not apply because, on the Department's recommendation, the minors were placed with their respective fathers. The ICWA provides: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe." (25 U.S.C. § 1912(a); see also *In re Louis S.* (2004) 117 Cal.App.4th 622, 630 [Department bears the burden "to obtain all possible information about the minor's potential Indian background and provide that information to the relevant tribe or, if the tribe is unknown, to the [Bureau of Indian Affairs]"].) The ICWA defines foster care placement as "any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been

19

terminated." (25 U.S.C. § 1903(1)(i).) Accordingly, the ICWA "requires notice only when child welfare authorities seek permanent foster care or termination of parental rights; it does not require notice anytime a child of possible or actual Native American descent is involved in a dependency proceeding." (*In re Alexis H.* (2005) 132 Cal.App.4th 11, 14, italics omitted; accord *In re M.R., supra*, 7 Cal.App.5th at pp. 904-905 [despite initially detaining the minor with maternal grandmother, no ICWA related error occurred when the minor was placed with a presumed parent and the department never sought long-term foster care placement or termination of parental rights]; see also *In re J.B.* (2009) 178 Cal.App.4th 751, 754-758 [relying on *In re Alexis H.* reasoning to hold "ICWA does not apply to a proceeding to place an Indian child with a *parent*"].)

Here, minors K.C., X.R., and H.R. were detained with family members except during a brief period prior to the juvenile court sustaining the petitions following the minors' surrender to Texas Child Protective Services and transfer to California. Because the Department did not seek long-term foster care placement or termination of parental rights (as defined by the ICWA) with respect to minors K.C., X.R., and H.R., the ICWA does not apply. (*In re Alexis H., supra*, 132 Cal.App.4th at p. 15; compare *In re Jennifer A.* (2002) 103 Cal.App.4th 692 [reversing orders placing minor in father's care where the child welfare department failed to comply with ICWA notice requirements, minor was placed in foster care, and Department throughout proceedings recommended continued foster care placement].)[10]

---

[10]    While mother relies on *In re Jennifer A.*, we find that case distinguishable because there, the child welfare department recommended that the minor remain in long-term foster care throughout the proceedings. (*In re Jennifer A., supra*, 103 Cal.App.4th at pp. 700-701.) As the court observed in *In re Alexis H.*: "[N]o published decision requires notice for proceedings not seeking foster placement or termination of parental rights. *In re Jennifer A.* (2002) 103 Cal.App.4th 692, comes closest, but a careful reading reveals a decision confined to its facts. There, child welfare authorities took a girl from

V

*Reversal as to Siblings*

Mother asserts that if this court reverses the jurisdictional and dispositional orders as to any one sibling based upon the arguments set forth above, reversal of the orders and judgment and remand to the juvenile court is warranted as to all siblings. She cites *In re Carmaleta B.* (1978) 21 Cal.3d 482 for the proposition that where there was an erroneous basis for terminating parental rights as to some of the siblings, the case should be remanded to allow the court to exercise its discretion as to all of the siblings. We disagree. This is not a termination of parental rights case, and we conclude the issues we are reversing and remanding on are procedural matters unique to the minor at issue. Accordingly, we decline to reverse the remaining orders of the juvenile court.

DISPOSITION

We reverse the jurisdictional and dispositional orders as to minor L.C. for lack of subject matter jurisdiction under the UCCJEA. The matter is remanded to the juvenile court with directions to proceed in accordance with the provisions of the UCCJEA. As to L.C., we also direct the juvenile court to vacate its findings that adequate ICWA notice was given and that ICWA does not apply. The matter is remanded for further ICWA compliance proceedings, whereafter the juvenile court shall enter new ICWA findings. If the minor, L.C., is found to be an Indian child, the juvenile court shall proceed in compliance with the ICWA, including considering any petition filed to invalidate prior orders. (25 U.S.C. § 1914; § 224, subd. (e).) We direct the juvenile court to vacate or

---

her mother and placed her in an emergency shelter. The girl's parents, who were not married, told the authorities of their Native American heritage, but the authorities did not give proper notice of the proceedings to the parents' tribes. Child welfare authorities thereafter recommended foster care for the child, but the court rejected the recommendation and placed her with her father." (*In re Alexis H., supra*, 132 Cal.App.4th at p. 15.) We are persuaded by the reasoning of *In re Alexis H.* and find the temporary foster placement in *In re M.R., supra*, 7 Cal.App.5th 886 more analogous to the facts at hand than those in *In re Jennifer A.*

21

modify the restraining order as to Father J. as necessary to effectuate its exit orders as to minor K.C.  The remaining orders of the juvenile court are affirmed.


       \s\
McADAM, J.*


We concur:


       \s\
DUARTE, Acting P. J.


       \s\
BOULWARE EURIE, J.

---

\*      Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.