Filed 5/30/23 In re J.A. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re J.A. et al., Persons Coming Under the Juvenile Court Law. | C097054 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. Nos. JV2020-0221-1 & JV2020-0221-2 ) |
| Plaintiff and Respondent, | |
| v. | |
| J.A. et al., | |
| Defendants and Appellants. | |

Appellants J.B. (mother) and J.A. (father), the parents of the minors, Jo.A. and C.A. (the minors), appeal from the juvenile court's orders terminating parental rights and freeing the minors for adoption. (Welf. & Inst. Code,[1] §§ 366.26, 395.) The parents

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

contend: (1) the Yolo County Health and Human Services Agency (the Agency) and the juvenile court failed to comply with the inquiry and notice requirements of the Indian Child Welfare Act (ICWA) because the Agency did not contact extended family members to inquire about the ICWA (25 U.S.C. § 1901 et seq.; § 224.2.); and (2) the juvenile court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (Fam. Code, § 3400 et seq.) (UCCJEA).

We conditionally affirm subject to full compliance with the ICWA on remand. We find the UCCJEA issue forfeited.

BACKGROUND

On November 3, 2020, the Agency filed a petition alleging that Jo.A. (age three) and C.A. (age 15 months) came within the provisions of section 300, subdivision (b)(1), failure to protect, and section 300, subdivision (d), sexual abuse. The minors were detained pursuant to a protective custody warrant. The petition alleged that the minors were at risk of physical and sexual abuse because their father was a registered sex offender who had been accused of molesting multiple children, including the minors' half sibling. The petition alleged that mother had failed to protect the minors because she was aware of the abuse but continued to live with father and allowed father to have contact with the minors.

The parents and the minors lived in Washington until father's conviction in California for contacting a minor, his daughter, with the intent of committing a sexual act. Following father's conviction, mother moved to California with the minors to be with him because he was not allowed to return to Washington. The Agency became aware of father's conviction about three weeks later.

In a November 3, 2020, detention report, the Agency reported that father had heard of possible Cherokee or Blackfeet ancestry on his paternal side.[2] Father denied knowing any other relatives who might have more information. Mother and her counsel denied that mother had any Native American ancestry. The minors were detained.

At the jurisdiction hearing on December 16, 2020, county counsel stated that father had reported Native American ancestry but the only person who would know details was deceased. She requested that the parents identify any additional relatives who could provide further information. The parents' respective counsel did not raise any issues regarding the UCCJEA.

In a January 4, 2021, disposition report, the Agency reported that mother completed an ICWA-20 form denying any Native American ancestry. Father completed an ICWA-20 form, stating that he had Klamath and Cherokee ancestry. Mother told the social worker that she loved father but was willing to separate from him if necessary. She indicated she would leave California and return to Washington to live with her parents if the minors were returned to her. Father indicated he would move to Washington to be with them after the end of his probation. The Agency recommended bypassing father for reunification services under section 361.5, subdivision (b)(16).

On February 8, 2021, the juvenile court held a contested jurisdiction and disposition hearing and addressed the ICWA issue. The court advised that the Agency should provide notice to the Cherokee, Blackfeet and Klamath tribes. Father informed the court that his grandmother, grandfather, and father all had Native American ancestry. Father gave a possible name for his grandmother. He stated that his mother (paternal

---

[2] Although father used the term "Blackfoot" throughout the case, we note: "[T]here is frequently confusion between the Blackfeet tribe, which is federally recognized, and the related Blackfoot tribe, which is found in Canada and thus not entitled to notice of dependency proceedings. When Blackfoot heritage is claimed, part of the Agency's duty of inquiry is to clarify whether the parent is actually claiming Blackfoot or Blackfeet heritage." (*In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.)

grandmother) would have more information about the family names and history, and the social worker indicated she had the name and contact information for the paternal grandmother. Father clarified that any Native American ancestry was through his father who was deceased. Father believed that his father was a part of the Klamath tribe. Father also believed his grandfather had Blackfeet heritage because he did research showing that the Klamath Falls Indians were a branch of the Blackfeet tribe. He reported both of his grandparents were deceased. The court advised that the ICWA inquiry should continue. The parents' respective counsel did not raise any issues regarding the UCCJEA.

At the continued contested jurisdiction and disposition hearing on March 10, 2021, neither mother nor father made any objections to the court's ability to take jurisdiction and never raised the issue of the UCCJEA or Washington as a more appropriate venue. The juvenile court sustained the amended petition, took jurisdiction, ordered family reunification services to mother, and bypassed father for services. The paternal grandmother was with mother, both who appeared by video during the hearing, but paternal grandmother was not asked about the minors' potential Native American heritage. The court authorized the Agency to request an Interstate Compact on the Placement of Children (ICPC) evaluation for the maternal grandparents in Washington.

On June 23, 2021, the Agency filed a section 388 petition, asking to suspend mother's in-person visits after the elder minor, Jo.A., disclosed sexual abuse by mother. At a hearing on July 7, 2021, mother's counsel said that mother was living in Washington in connection with her request to appear remotely. Counsel did not raise any issues regarding the UCCJEA or jurisdiction. The court suspended mother's in-person visitation and also reduced visits. At the six-month review hearing on September 29, 2021, the juvenile court terminated mother's reunification services and set a selection and implementation hearing.

4

On January 26, 2022, the Agency reported that the social worker contacted father to obtain more information about the ICWA, but father had not yet responded to the social worker's contact. The court ordered father to complete an ICWA-20 form. On February 2, 2022, the Agency reported that father continued refusing to respond. Father then advised the juvenile court that he would not return the ICWA-20 form. The court again ordered father to fill out the ICWA-20 form, under penalty of contempt, and to meet with the social worker to discuss ICWA issues. On April 12, 2022, the Agency reported father had still not provided the necessary information, and the Agency intended to send the Bureau of Indian Affairs the limited information it had.

On June 24, 2022, the Agency filed an addendum report, listing its attempts to contact father. On March 3, 2022, father told the social worker that no living relatives were members of any tribe, and he could not provide information on where relatives were born, died, or if they lived on a reservation. The social worker called multiple phone numbers for the paternal grandmother, but the phone numbers were disconnected or no longer belonged to her. The Agency also reported that it sent notice to the tribes with the information it had, and all but two of the tribes responded that the minors were not eligible for membership. The Klamath and Blackfeet tribes had not responded, so the Agency sought a continuance. On August 31, 2022, the Agency filed another addendum report, adding the Blackfeet tribe's letter stating the minors were not eligible for membership.

At the contested section 366.26 hearing on September 21, 2022, the juvenile court found the minors adoptable, determined no statutory exceptions to adoption were applicable, entered a finding that the ICWA did not apply, and terminated parental rights.

5

DISCUSSION

I

*The ICWA*

The parents contend that the Agency and the juvenile court failed to comply with their initial duty of inquiry under section 224.2, subdivision (b). The Agency responds that the inquiry was adequate, and any error was harmless. We disagree with the Agency.

As this court recently explained: " 'The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." [Citation.]' (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an ' "Indian child" ' as a child who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).) The juvenile court and the social services department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)" (*In re G.A.* (2022) 81 Cal.App.5th 355, 360, review granted Oct. 12, 2022, S276056.)[3]

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry*

---

[3] Pursuant to California Rules of Court, rule 8.1115(e)(1), we cite and discuss *In re G.A., supra*, 81 Cal.App.5th 355, review granted, solely for its "persuasive value."

6

regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id*., subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id*., subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

The parents cite section 224.2, subdivision (b), which imposes a more extensive duty to inquire about Indian ancestry if a child is placed in the temporary custody of a welfare department (§ 306) or probation department (§ 307): "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).)

The Agency acknowledges it did not ask the paternal grandmother or any of mother's extended family members about Indian heritage even though some of these relatives were known to the Agency. The Agency argues that any error is harmless because the record does not support a reason to believe that the minors may be an " 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial." (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578; see *id.* at pp. 779-782.)[4] Recently, our Supreme Court granted review in *Dezi C.*, and we anticipate further clarification on this issue. Until such time,

---

[4] Pursuant to California Rules of Court, rule 8.1115(e)(1), we cite and discuss *In re Dezi C., supra*, 79 Cal.App.5th 769, review granted, solely for its "persuasive value."

we conclude that given the remedial purpose underlying the ICWA and related California law intended to protect third party rights, we apply the analytical framework set forth by the California Supreme Court in *In re A.R.* for assessing harm, and we conclude the error is prejudicial. (*In re A.R.* (2021) 11 Cal.5th 234, 252-254 [determining whether an error is prejudicial requires viewing the error through the lens of the remedial purpose of the law at issue].)

Due to changes in California law over the past few years, agencies now have a broader duty of inquiry and a duty of documentation (§ 224.2, subd. (b); Cal. Rules of Court, rule 5.481(a)(5)), and courts have been tasked with determining how to assess error when the agency fails to discharge its now-broad duty of inquiry. Agencies have often conceded error and, therefore, disposition of the issue on appeal has turned on whether the error was prejudicial. Although reviewing courts generally agree that reversal is dependent on showing prejudice or a miscarriage of justice, approaches for assessing prejudice have varied. (See, e.g., *In re E.V.* (2022) 80 Cal.App.5th 691, 698; *In re Dezi C.*, *supra*, 79 Cal.App.5th at p. 779, review granted; *In re J.C.* (2022) 77 Cal.App.5th 70, 80; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744; *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069.) In this court's prior decision addressing this issue, *In re G.A.*, *supra*, 81 Cal.App.5th 355, review granted, the parents both repeatedly denied Indian ancestry and the record showed that the child welfare agency attempted to contact other family members, but they were not responsive. (*Id.* at pp. 359, 362.) The mother there claimed that to demonstrate prejudice, she needed to show only " 'there were sources of information readily available to respondent that were not consulted.' " (*Id.* at p. 362.) We rejected her contention and determined that the evidence derived from the initial inquiry " 'was sufficient for a reliable determination' " and the agency had no duty to inquire beyond that which it did. (*Id.* at p. 363.)

Here, in contrast to *In re G.A.*, there is no indication that the Agency made any effort to inquire of any accessible maternal relatives regarding the minor's ancestry, even

though the maternal grandparents were evaluated under the ICPC. Instead, it relied exclusively on mother's representations to satisfy its duty of inquiry as to the maternal side. In further contrast to *In re G.A.*, one parent here (the father) reported possible Native American heritage. While the Agency made several failed attempts to contact the paternal grandmother with incorrect phone numbers, the Agency was also aware that the paternal grandmother lived with the parents and did not list any attempt to reach her by another method, such as by calling the parents. Finally, the record shows the paternal grandmother was on the video conference for a hearing, just one month after father named her as the only living person in his family with information about possible Native American ancestry. But it does not appear the Agency or the juvenile court asked the paternal grandmother about Native American ancestry. Additionally, because the minors were taken into protective custody, section 224.2, subdivision (b) applies, and a heightened duty of inquiry—including inquiry of extended family members—applies. Because the Agency and juvenile court failed to discharge the initial inquiry duty as to the maternal relatives and the paternal grandmother, we will conditionally affirm but remand for ICWA compliance.

II

*The UCCJEA*

Father and mother contend for the first time on appeal that reversal of the dispositional and jurisdictional orders is required because the juvenile court lacked subject matter jurisdiction under the UCCJEA. The Agency contends the issue is forfeited because the parents failed to appeal prior orders or raise an objection in the juvenile court. We agree the issue is forfeited.

The UCCJEA "governs dependency proceedings and is the exclusive method for determining the proper forum to decide custody issues involving a child who is subject to a sister-state custody order." (*In re Cristian I.* (2014) 224 Cal.App.4th 1088, 1096.) "The UCCJEA is a model law that 'arose out of a conference of states in an attempt to

9

deal with the problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties where multiple states are involved.' [Citations.]" (*In re J.W.* (2020) 53 Cal.App.5th 347, 354-355 (*J.W.*).) It is designed to avoid jurisdictional conflicts between states and relitigation of custody decisions, promote cooperation between states, and facilitate enforcement of another state's custody decrees. (*In re Gloria A.* (2013) 213 Cal.App.4th 476, 482.) "The UCCJEA is the exclusive method in California to determine the proper forum in child custody proceedings involving other jurisdictions." (*In re Jaheim B.* (2008) 169 Cal.App.4th 1343, 1348.) "[A]s with any statute, interpretation of the UCCJEA is a question of law we review de novo." (*Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1287.)

Generally, if a parent does not appeal a disposition or postdisposition order, those orders are "final and binding and may not be attacked on an appeal from a later appealable order." (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150.) The forfeiture rule services the vital policy consideration of finality and prevents "late-stage 'sabotage of the process' through a parent's attacks on earlier orders." (*In re Jesse W.* (2001) 93 Cal.App.4th 349, 355, quoting *In re Janee J.* (1999) 74 Cal.App.4th 198, 207.) The parents nevertheless contend that the question of whether a UCCJEA claim may be forfeited is unsettled and this court should exercise its discretion to consider the issue despite the parents' failure to raise it in the trial court.

In *J.W.*, similar to the facts presented here, the mother moved to California from Louisiana a few weeks prior to the detention hearing. (*J.W.*, *supra*, 53 Cal.App.5th at p. 353.) No one, including the mother or father or their counsel, raised the question of whether there was jurisdiction under the UCCJEA at any point during the proceedings. (*Id.* at pp. 353-354.) Just as here, the father raised the UCCJEA issue for the first time on appeal from a termination of parental rights and argued that all findings and orders made by the juvenile court must be reversed. (*Id.* at pp. 353, 355.) In addressing the question

10

of forfeiture, the court of appeal reasoned that: "The UCCJEA . . . embodies an agreement among states on rules to determine which jurisdiction should provide the proper forum. [Citations.] Because it is a mandatory rule, a court errs when it does not satisfy the requirements of the UCCJEA, and a preserved error can lead to reversal. [Citations.] But where, as here, the UCCJEA is not raised in the juvenile court, it can be forfeited just like other important, mandatory rules. [Citation.]" (*Id.* at p. 358, citing *Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330 [distinguishing fundamental jurisdiction from mandatory jurisdictional rules and concluding that issues regarding the latter may be forfeited].) The court further reasoned that the Legislature did not intend the UCCJEA, as a forum selection statute, to create fundamental jurisdiction: "In dependency law, our Legislature has placed a particular emphasis on the need to make orders terminating parental rights final. This leads us to conclude that . . . the Legislature did not intend to make UCCJEA jurisdiction a matter of fundamental jurisdiction on top of the fundamental jurisdiction established by . . . section 300 in standard dependency cases. Specifically, . . . section 366.26, subdivision (i) prohibits virtually all collateral attacks on termination orders, evincing a clear intent to restrict their review. But equating UCCJEA jurisdiction with fundamental jurisdiction would constitute a wide exception to the finality afforded by this provision, as a meritorious claim of UCCJEA error could undo a termination order despite the failure to raise the issue in juvenile court." (*J.W.*, at p. 360.) We agree with the reasoning of *J.W.* and conclude that the UCCJEA does not regulate a California trial court's fundamental jurisdiction and may therefore be forfeited by a failure to raise the issue in juvenile court.

In a recently published decision, *In re L.C.* (2023) 90 Cal.App.5th 728, 738 (*L.C.*), the court of appeal distinguished *J.W.* on its facts but did not disagree with its reasoning: "Even if it is true that the UCCJEA does not concern issues of fundamental jurisdiction that cannot be forfeited, *In re J.W.* says nothing about whether there are other reasons why the forfeiture doctrine should not apply to the UCCJEA issue raised in this appeal."

In *L.C.*, the mother reported she and her children were visiting San Diego from Florida and that she intended to return to Florida in a few days. (*Id.* at p. 734.) Because the mother listed a series of residences in different states and the child welfare agency found possible dependency cases in those states, the agency noted at the outset of the case that there were potential UCCJEA issues in Florida, Texas, and Arizona. (*Ibid.*) Despite that the mother said she was only visiting California with her children and despite that the family had possibly dependency history in other states, the juvenile court did not undertake the jurisdictional analysis required by the UCCJEA. (*Ibid.*) The Court of Appeal reasoned that in light of these facts, "the usual benefit from the application of the forfeiture doctrine—to encourage parties to bring issues to the trial court—would not be conferred under the facts of this case." (*Id.* at p. 738, italics omitted.)

In contrast, the minors here lived in California at the time of detention and throughout the case and were noted to have California Medi-Cal insurance at the outset of the case. Father lived in California prior to the case opening and was required to remain in California as a condition of his probation. There was no evidence of custody proceedings involving these minors in Washington.[5] Mother initially expressed interest in moving back to Washington—and did move to Washington temporarily during the pendency of the case; mother later stated she planned to move back to California.

Here, neither parent appealed the findings and orders of the juvenile court made at the combined jurisdiction and disposition hearing on March 10, 2021, or any subsequent hearings before this one. Additionally, the parents never raised the question of whether the juvenile court lacked subject matter jurisdiction under the UCCJEA. We conclude the parents have forfeited their claims.

---

[5] Father cites testimony about a child welfare investigation in Washington, but that was an investigation of the safety of other children living in a home where mother was a guest, following the allegations against mother of sexual abuse.

12

DISPOSITION

The orders terminating parental rights are conditionally affirmed subject to full compliance with the ICWA as described in this opinion. If, on remand, the juvenile court determines the ICWA applies, the court shall vacate its previous orders terminating parental rights and conduct further proceedings consistent with the ICWA, including a new section 366.26 hearing. (25 U.S.C. § 1914; § 224, subd. (e).)


/s/
MESIWALA, J.



We concur:



/s/
HULL, Acting P. J.



/s/
RENNER, J.


13